STREET IMPROVEMENT DISTRICT No. 419 *v.* LEWIS.

4-9170                                                226 S. W. 2d 813

Opinion delivered February 6, 1950.

*Townsend & Townsend,* for appellant.

*L. P. Biggs,* for appellee.

GRIFFIN SMITH, Chief Justice.   Bond obligations of Street Improvement District No. 419, Little Rock, have been paid and a surplus fund is held by the Commissioners.   This surplus includes proceeds from the 1947 assessments, which were final.   Katherine D. Lewis paid on a designated lot for that year, but sold the property May 12, 1949, to a grantee who is not identified in the record here.   When the District, acting subsequent to the delivery of Mrs. Lewis' deed, announced that a distribution of surplus money would be made under authority of Act 350 of 1949,[1] Mrs. Lewis sought by injunction to prevent what she thought would be an illegal diversion if the dividend or *pro rata* distribution should be paid to the one owning the legal title when the apportionment was made.   Mrs. Lewis contends that in paying throughout

---

[1] The Act provides that when a District has paid its bonded indebtedness and a surplus has accumulated from assessments or the sale of unredeemed property, the money may be refunded *pro rata* "to the property owners of such district." Section 2 of the Act defines property owner as "the holder or holders of the legal title at the time such refund is made." Section 3 excludes from the Board's consideration "any real estate or parts or parcels of real estate which are delinquent at the time such refund is made." [The complaint, as copied for the record, mentions Act 340 of 1949. This is obviously a typographical error, as all parties in discussing the applicable statute refer to Act 350 of 1949].

the years, and particularly by discharging the final lien in 1947, she acquired a vested interest in the surplus fund, hence the General Assembly was powerless to legislate otherwise.

District No. 419 demurred to the complaint. Street Improvement Districts No. 438, 540, and 541, intervened, alleging that the status of each in respect to refunds was similar to that of the primary defendant. They also demurred.

When the demurrers were overruled and the defendants refused to plead further, a decree was entered directing that "the defendant district" should distribute ratably to property owners who paid the 1947 assessments. The interveners were ordered to recognize as rightful claimant "the property owners who paid the last levy on the assessment of benefits."

The nature of improvement districts, including known and unknown variants, prevents a mathematically accurate determination of all financial factors when benefits are assessed. It has been held that payment by the property owners of an originally estimated amount carries with it the District's reciprocal promise of *pro rata* refunds when the primary venture has ended. *Thibault* v. *McHaney, Receiver,* 127 Ark. 1, 192 S. W. 193.[2]

As expressed in the brief, appellee rests her claim of right upon the relationship of debtor and creditor. This status [she says] became fixed when the surplus came into existence; and, since the Act seeks to substitute one creditor for another "without hearing and without notice," there is want of due process—"just a legislative fiat that funds paid to the District by 'A' shall be repaid to 'B'."

It is suggested that support for the trial court's invalidation of Act 350 is implicit in our holding that a district could not take funds intended for construction and use them in making repairs. *Paving District No. 5 [of Ft. Smith]* v. *Fernandez,* 142 Ark. 21, 217 S. W. 795.

---

[2] There were two appeals in this case. See *Thibault* v. *McHaney,* 119 Ark. 188, 177 S. W. 877.

Act 579 of the Special Acts of 1919 authorized the application challenged by Fernandez. The ground upon which the decision rests is that building streets in the first instance, and maintaining them after the initial undertaking has been completed, are separate undertakings of such a distinct nature that statutory procedure has been prescribed, the basis of which is consent of the taxpayers.[3] The 1919 Act had the effect of adding to the property the burden of maintenance. Since this could not be done in the manner undertaken, there was the implied obligation to refund, mentioned by Judge FRANK SMITH.

All essential improvement district proceedings, whether taken before or after organization is completed, are *in rem*. In determining how the improvement shall be paid for there is a legal finding of benefits. Notice of assessment, sale for non-payment,—these relate directly to the land as distinguished from individual or corporation ownership. There is no personal liability. A District's surplus, in the sense dealt with here, ordinarily comes about when ready funds are needed near the end of a bond maturity period to offset delinquencies, including taxes not collected from property foreclosed on. Because obligations have been paid with money realized from levies that would have been unnecessary had collections been uniform, the principle is urged that when the surplus accrues it imperatively becomes an asset for *pro rata* distribution, and the legislative attempt to control its application, if prejudicial to those who actually paid, is an invasion of constitutional rights.

Act 350 does not impair a vested right. After its enactment property owners were charged with notice that refunds would go to the person having legal title at the time such refund was made, and *that time* is when the Board formally adopts its resolution directing disbursement. If the parties wish to make a different arrangement, this may be effectuated by contract between grantor and grantee showing allocation or full assignment, and this assignment when filed with the Commis-

---

[3] See Ark. Stats. (1947), § 20-317.

598

sion and evidenced by its receipt, would afford protection; but if, without such private arrangement, the owner conveys subsequent to the effective date of Act 350, the transaction is with notice of the law's provisions, and the grantor's interest passes with the realty.

Reversed.

